UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PK STUDIOS, INC.,

       Plaintiff,

v.                                   Case No: 2:15-cv-389-FtM-99CM

R.L.R. INVESTMENTS, LLC,
EAGLES LANDING VILLAS AT
GOLDEN OCALA, LLC, GOLDEN
OCALA GOLF & EQUESTRIAN
CLUB MANAGMENT, LLC,
STOCK DEVELOPMENT, LLC
and BRIAN STOCK,

       Defendants.

_____

## ORDER

This matter comes before the Court upon review of Plaintiff's Motion for Extension of Time to Designate an Alternate Damages Expert and File Expert Report and Disclosure of Expert (Doc. 114) filed on January 9, 2017; Plaintiff's Motion for Protective Order (Doc. 116) filed on January 10, 2017; and Defendants', Stock Development, LLC, and Brian Stock (collectively "Stock"), Motion for Approval for Insurance Adjuster to Appear at the Mediation Telephonically (Doc. 125) filed on January 27, 2017. Defendants R.L.R. Investments, LLC, Eagles Landing Villas at Golden Ocala, LLC, and Golden Ocala Golf & Equestrian Club Management, LLC ("Golden Ocala") (collectively the "Developer Defendants") and Stock oppose Plaintiff's motion to designate an alternate damages expert. Docs. 119, 122. Stock

opposes Plaintiff's motion for protective order, and the Developer Defendants oppose Stocks' motion to appear telephonically.   Docs. 118, 125 at 6.

## I.   Background

On June 29, 2015, Plaintiff filed a Complaint against the Developer Defendants and Stock (collectively "Defendants").   Doc. 1.   Plaintiff is an architectural firm comprised of licensed architects, conducting business in Collier County, Florida.   *Id.* ¶ 11.   Plaintiff alleges that on September 22, 2004, Plaintiff entered into a contract with Stock to create a master plan and architectural designs for homes (the "Work") in the Olé and Paseo communities located in Collier and Lee Counties.   *Id.*   Plaintiff claims that shortly after Plaintiff completed the requested designs, construction began.   *Id.* ¶ 12.

Plaintiff alleges that on March 4, 2009, Stock decided to terminate its contract with Plaintiff and sent a letter of notice to Plaintiff.   *Id.* ¶ 13.   The letter allegedly contained the parties' release agreement pursuant to which Plaintiff released its drawings and specifications to Stock to be used on the Ole and Paseo projects.   *Id.* Plaintiff argues that as conditions of the release agreement, Plaintiff's drawings and specifications remained as Plaintiff's property, and Plaintiff reserved the right to exclusive copyright and other intellectual property rights to the Work.   *Id.* ¶¶ 14-15. The release agreement also prohibited any future architect's use of the Work absent an indemnification agreement with Plaintiff.   *Id.* ¶ 15.

According to Plaintiff, in May 2014, it discovered that the Developer Defendants were using the Work for the development of a property known as Eagles

Landing.  *Id.* ¶¶ 17-19.   Plaintiff alleges that one or more homes in Eagles Landing were exact duplicates of the Work.   *Id.* ¶ 19.   Plaintiff claims that it issued a cease and desist letter to Golden Ocala in November 2014 and applied for and received a Certificate of Copyright Registration of the Work.   *Id.* ¶¶ 21-23.   On December 5, 2014, Plaintiff allegedly received a letter from Golden Ocala that Stock licensed the Work to Golden Ocala for limited use in Eagles Landing.   *Id.* ¶ 24.   Plaintiff claims that Stock had no right to license the Work to the Developer Defendants.   *Id.*   As a result, Plaintiff commenced this lawsuit, alleging causes of action for copyright infringement against the Developer Defendants, breach of contract against Stock, and a declaratory judgment that Stock had no right to grant a limited license of the Work.   *Id.* at 6-9.

On December 24, 2015, Senior United States District Judge John E. Steele issued a Case Management and Scheduling Order ("CMSO") setting the deadline for motions to add parties or to amend pleadings to May 2, 2016, the discovery deadline to September 1, 2016, the deadline for dispositive motions to November 1, 2016, and a trial term of February 6, 2017.   Doc. 48.   On July 7, 2016, Plaintiff filed an Emergency Motion to Extend Expert Report Disclosure Deadline (Doc. 64), which the Court denied without prejudice because Plaintiff did not articulate any good cause for extension.   Doc. 65 at 3.   Plaintiff filed a Motion to Extend Trial Date and Other Deadlines (Doc. 69) on July 15, 2016, and Stock also filed a Motion to Extend Trial Date and Other Deadlines in CMSO (Doc. 72) on August 11, 2016.   Judge Steele denied without prejudice both motions on August 30, 2016.   Doc. 74 at 28.

On September 8, 2016, Plaintiff filed a second motion to extend the CMSO deadlines.   Doc. 77.   The Court granted the motion and extended the remaining deadlines by at least four months with the emphasis that "the parties' continued diligence and coordination [] will eliminate the parties' future need to file additional motions to extend the deadline."   Doc. 80 at 2-3.   The Court also entered an Amended CMSO, extending Plaintiff's deadline for disclosure of expert reports to October 28, 2016, Defendants' deadline for disclosure of expert reports to November 30, 2016, the discovery deadline to February 10, 2017, the mediation deadline to February 17, 2017, the deadline for dispositive motions to March 31, 2017, and the trial term to commence on July 3, 2017.   Doc. 81.

## II.   Plaintiff's Motion for Extension of Time to Designate an Alternate Damages Expert and File Expert Report and Disclosure of Report (Doc. 114)

District courts have broad discretion when managing their cases in order to ensure that the cases move to a timely and orderly conclusion.   *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002).   The standards for modification of deadlines are set forth in Rules 6 and 16 of the Federal Rules of Civil Procedure. Rule 6 requires a showing of excusable neglect when, as here, a party files a motion after the time for filing such motion has expired.   Fed. R. Civ. P. 6(b)(1)(B).   Rule 16 requires a showing of good cause for modification of a court's scheduling order. Fed. R. Civ. P. 16(b)(4).   Thus, a party must demonstrate both good cause and excusable neglect for filing an untimely motion.   *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1252 (M.D. Fla. 2009).   "Th[e] good cause

standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F. 3d 1417, 1418 (11th Cir. 1998) (internal quotations and citations omitted).

When evaluating whether a party has shown excusable neglect, the Court considers "'the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d. 996, 997-98 (11th Cir. 1997) (quoting *Pioneer Investment Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)).

Here, Plaintiff must demonstrate both good cause and excusable neglect because Plaintiff filed the present motion over two months after its deadline of October 28, 2016 to disclose expert reports had expired. Doc. 114. Plaintiff's present motion seeks to extend the deadline for disclosure of expert reports in order to designate a new damages expert. *Id.* at 4. Plaintiff also seeks to extend the discovery deadline of February 10, 2017 by one month for limited purpose of conducting discovery regarding damages experts only. *Id.* at 2.

Plaintiff argues that on October 28, 2016, it served the report of its damages expert, Michael A. Einhorn, Ph.D. ("Einhorn"), to all parties. *Id.* at 2. Plaintiff alleges that Einhorn resigned as the damages expert on December 31, 2016, evidenced by Einhorn's email dated December 31, 2016. *Id.*; Doc. 114-1. Einhorn stated in his email that Plaintiff has an unpaid balance of $1,022 with him. Doc.

114-1.   Plaintiff argues that its expert's sudden resignation constitutes excusable neglect to extend the deadline to disclose expert reports.   *Id.* at 3-4.   Plaintiff also asserts that Plaintiff will be prejudiced to continue litigating without a damages expert because damages are at issue for trial.   *Id.* at 4.   Plaintiff claims that by exercising due diligence, it already has found a new damages expert, Lloyd J. Morgenstern, C.P.A., to replace Einhorn.   *Id.* at 5.

Both Stock and the Developer Defendants oppose the present motion.   Docs. 119, 122.   Stock argues that Plaintiff's motion is extremely prejudicial because obtaining agreements and scheduling in this matter have been difficult due to the presence of multiple counsel.   Doc. 119 at 4.   Furthermore, Stock asserts that it retained its economist and architect and expended a significant amount of resources in analyzing Einhorn's report based on its understanding that Einhorn would testify. *Id.*   Stock claims that Plaintiff's new expert is likely to testify to different issues and offer much broader testimony.   *Id.*   As a result, Stock argues that if the Court allows Plaintiff to replace Einhorn with a new expert witness, then the Court should limit the new expert's opinion to that provided by Einhorn.   *Id.*

Stock asserts that *Leibel v. NCL (Bahamas) Ltd.*, 185 F. Supp. 3d 1354 (S.D. Fla. 2016), supports its opposition.   *Id.* at 6.   In *Leibel*, the plaintiff moved to substitute the expert witness after the deadline to designate experts, the discovery deadline, and the deadline for dispositive motions had expired.   185 F. Supp. 3d at 1356.   The plaintiff in *Leibel* argued that her expert only recently quit and the expert's reason for doing so was outside of the plaintiff's control.   *Id.*

In denying the plaintiff's motion, the *Leibel* court summarized the grounds for allowing or denying motions to substitute an expert witness. *Id.* at 1356-37. As Stock points out, the court held that an expert witness may be substituted "when unexpected events prevent the designated expert form testifying at trial," including the expert's conflict of interest, recovery from leukemia, incarceration, and Alzheimer's disease. *Id.* at 1356. On the other hand, the court found that an expert witness may not be substituted "when the reason for the substitution was foreseeable and resulted from the parties' lack of diligence," such as when a party learns of an expert's unwillingness or inability to serve and waits several months to seek substitution, attempts to complement the expert's inadequate or incomplete preparation, or lacked diligence in ensuring the availability of its own expert. *Id.* at 1357.

Stock asserts that contrary to *Leibel*'s holdings, Plaintiff offers no basis for Einhorn's resignation, except that Einhorn's email dated December 31, 2016 shows issues regarding the financial arrangement. Docs. 114-1, 119 at 8. Instead, Stock claims that by substituting its expert witness, Plaintiff is attempting to bring in another alternate damages theory because it realized that there was and will be no profit for the Eagles Landing Project. Doc. 119 at 8. Furthermore, Stock argues that Plaintiff's substitution of the expert witness will cause Stock to analyze the report of Plaintiff's new damages expert, which will be time-consuming and costly. *Id.* As a result, Stock asserts that Plaintiff does not show good cause or excusable neglect under Rules 6 and 16. *Id.*

The Developer Defendants also oppose Plaintiff's motion.   Doc. 122.   The Developer Defendants argue that Plaintiff's motion is untimely because the Developer Defendants already expended a considerable amount of resources to refute Einhorn's expert opinion, and it is only approximately one month before the discovery deadline.   *Id.* at 4.   The Developer Defendants assert that the substitution of Plaintiff's expert will likely lead to different expert opinions and give the Developer Defendants insufficient time to prepare their defenses before trial.   *Id.* at 5.   In support, the Developer Defendants also rely on *Leibel*.   185 F. Supp. 3d at 1354-57. The Developer Defendants assert that Plaintiff is not forthcoming about the expert witness's resignation, and the reason for Plaintiff's substitution of Einhorn was foreseeable because it was a result of Plaintiff's lack of diligence.   Doc. 122 at 6.   The Developer Defendants argue that the only reason Plaintiff offered for Einhorn's resignation is that Plaintiff failed to comply with the financial arrangements with Einhorn, which does not amount to the level of unexpectedness as required under the Federal Rules of Civil Procedure.   *Id.*

Lastly, the Developer Defendants claim that Plaintiff did not diligently seek an extension of the CMSO deadline because the dispute between Plaintiff and Einhorn concerning their financial arrangements became apparent on or about October 29, 2016 when Einhorn sent his invoice to Plaintiff.   *Id.* at 7.   The Developer Defendants argue that Plaintiff offers no explanation what happened between October and December 2016 until Einhorn allegedly expressed his desire to resign.   *Id.*   Regardless, the Developer Defendants assert that Plaintiff lacked

diligence in waiting until January 2017 to file this motion to substitute its expert witness.  *Id.*

Here, although the Court concedes that Plaintiff does not sufficiently explain the reason for Einhorn's resignation, harsh prejudice might result to Plaintiff to proceed without an expert witness.   Doc. 114; *Avant Garde Eng'g and Res. Ltd. v. Nationwide Equip. Co., Inc.*, No. 3:11-cv-525-J-20TEM, 2013 WL 12153534, at *2 (M.D. Fla. Sept. 11, 2013) (allowing the substitution of the expert witness "due to the peculiar demands of this case and the admittedly harsh result that may result."). Similar to *Avant Garde Engineering and Resources*, Einhorn already resigned on December 31, 2016, and Plaintiff will be prejudiced to litigate without a damages expert because damages are at issue for trial.   2013 WL 12153534, at *1; Docs. 114 at 4, 114-1.   Plaintiff also promptly moved to substitute Einhorn by filing this motion within nine days of Einhorn's resignation email.   Docs. 114, 114-1; *see S. Gardens Processing Corp. v. Barnes Richardson & Colburn*, No. 2:11-cv-377-99SPC LEAD, 2013 WL 2711961, at *2 (M.D. Fla. June 11, 2013).   Furthermore, Defendants have not deposed Einhorn, and Plaintiff alleges that Defendants need not retain additional expert witnesses to analyze Plaintiff's substitute expert's report.   Docs. 114 at 2, 116.

As a result, the Court finds that allowing the substitution of Einhorn with a new expert witness is in the best interests of justice.   *See Avant Garde Eng'g and Res.*, 2013 WL 12153534, at *2; *S. Gardens Processing Corp.,* 2013 WL 2711961, at *2.   Because the Court is mindful of Defendants' concerns that Plaintiff's substitution of its expert witness may impact the CMSO deadlines and Defendants'

trial tactics, the Court also will direct the parties to meet and confer and jointly file a motion for extension of the remaining CMSO deadlines.

### III.    Plaintiff's Motion for Protective Order (Doc. 116)

On December 28, 2016, Stock served an Amended Notice of Taking Videotaped Deposition Duces Tecum of Einhorn to depose Einhorn on January 17, 2017.   Doc. 118-1.   Plaintiff seeks a protective order cancelling the scheduled deposition because Einhorn has resigned as Plaintiff's expert witness.   Doc. 116 at 3.   Stock opposes the requested relief.   Doc. 118.   Because Einhorn resigned and will be substituted with a new expert witness, this motion is now moot.

### IV.    Stock's Motion for Approval for Insurance Adjuster to Appear at the Mediation Telephonically (Doc. 125)

Stock seeks the Court's permission to allow the telephonic appearance of Brian Stock's insurance adjuster for Great American Insurance Group ("Great America") at the mediation scheduled on February 1, 2017.   Doc. 125.   Stock states that the adjuster for Great America will be available to participate telephonically with full authority to settle claims.   *Id.* at 3.   In addition, Stock alleges that Brian Stock, the corporate representative of Stock Development, LLC, and counsel and the insurance adjuster for Stock will physically be present at the mediation with full authority to settle claims.   *Id.* at 4-5.   Plaintiff does not oppose the requested relief, but the Developer Defendants oppose the requested relief.   *Id.* at 6.

On February 2, 2017, the parties' mediator filed a Mediator's Report that all counsel and the parties as well as Defendants' representatives with total authority appeared at the mediation on February 1, 2017.   Doc. 126.   The mediator reported,

however, that the parties reached total impasses.   *Id.*   Given the mediator's report, Stocks' motion is now moot.

ACCORDINGLY, it is hereby

**ORDERED:**

1.      Plaintiff's Motion for Extension of Time to Designate an Alternate Damages Expert and File Expert Report and Disclosure of Expert (Doc. 114) is **GRANTED**.

2.      Plaintiff shall have up to and including **February 14, 2017** to substitute Michael A. Einhorn, Ph.D. with Lloyd J. Morgenstern, C.P.A., as its new damages expert, and to provide the expert disclosures required by Rule 26(a).

3.      Defendants shall have up to and including **March 16, 2017** to supplement their expert disclosures under Rule 26(a).

3.      Plaintiff's Motion for Protective Order (Doc. 116) **DENIED as moot**.

4.      Defendants', Stock Development, LLC, and Brian Stock, Motion for Approval for Insurance Adjuster to Appear at the Mediation Telephonically (Doc. 125) is **DENIED as moot**.

5.      The parties shall have up to and including **February 17, 2017** to jointly file a motion to extend the CMSO deadlines.

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of February, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record